(164 App. Div. 483)

### VAN NESS v. RANSOM et al.

(Supreme Court, Appellate Division, Second Department.   November 27, 1914.)

1. DIVORCE (§ 277*)—ALIMONY—ARREARS—COLLECTION—EVIDENCE.

   In an action against administrators to recover back installments of alimony, where the defendants claimed that the wife had signed and acknowledged an agreement releasing the judgment for alimony, evidence that the wife did not sign the agreement *held* insufficient to rebut the certificate of her acknowledgment by the commissioner of deeds.

   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 733–734½; Dec. Dig. § 277.*]

2. TRIAL (§ 164*)—QUESTIONS FOR COURT—MOTIONS FOR JUDGMENT.

   Where both parties move for judgment, the questions of fact are left to the trial court.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. § 372; Dec. Dig. § 164.*]

3. DIVORCE (§ 243*)—ALIMONY—JUDGMENT—RELEASE—EXECUTED AGREEMENT.

   An agreement entered into between a husband and wife the day after the wife secured a decree for divorce and alimony, which, after reciting the judgment, states that the wife, desired $10,000, to be paid to her, to be received by her as the full discharge for all claim for alimony and compensation for her dower interest, that, in consideration of said sum to be paid as thereinafter specified, she will and does release her claims for alimony and dower, that the husband may convey any property owned by him unincumbered by her dower rights, and that the husband shall pay in cash an amount greater than the cash payment required by the judgment, and the balance in installments of $2,000 yearly, payable as the wife shall direct, is an executed release of the judgment and not an executory agreement to release upon payment of the full $10,000.

   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 684–686; Dec. Dig. § 243.*]

4. PAYMENT (§ 73*)—EVIDENCE—RELEASE—EXECUTORY RELEASE—PERFORMANCE.

   In an action to recover back installments of alimony, where a release of the judgment was pleaded, evidence *held* insufficient to show payment by the husband of the amounts required in the agreement for release, if that agreement was executory and not operative until the payments were made.

   [Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 220, 222–225, 232–238; Dec. Dig. § 73.*]

Appeal from Trial Term, Nassau County.

Action by Deborah Van Ness against Rastus S. Ransom and another. From a judgment for defendants, rendered by the Trial Term (144 N. Y. Supp. 420), plaintiff appeals.   Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-TON, and PUTNAM, JJ.

Charles Blandy, of New York City (Ralph W. Thomas, of New York City, on the brief), for appellant.

Almuth C. Vandiver, of New York City (Isaac H. Levy, of New York City, on the brief), for respondents.

THOMAS, J. [1] The plaintiff, at the time of the trial 92 years of age, appears to have recovered alimony at the rate of $600 per year awarded her on May 23, 1867, in a judgment of divorce by default against her husband, Cornelius Henry·Van Ness, who died June 25, 1911. On May 24, 1867, she was preparing to sail the next day for Europe, and did so sail in company with Mr. Parsons, then about 20 years of age, and her daughter Alice, then about 19 years of age. The party remained abroad until May, 1872. Parsons married the daughter in April, 1874, and the mother continuously resided with them thereafter. At the time of the divorce, Van Ness lived with his family at 33 Union Square, New York City. Mr. Parsons and Miss Van Ness went abroad to study music, and Mr. Van Ness gave the plaintiff $500 before they started, and continued to send them money to the total sum of $6,500 or $7,500, which was used as hereinafter stated. Parsons kept an accurate account and returned something to Van Ness. Van Ness bought for his daughter a house in Garden City in 1900 and gave her $17,000 in money, and after the death of her son built for her an expensive mausoleum. The wife and Parsons never heard of the alimony, as she says, and the daughter did not hear of the divorce until after Van Ness' death, when it came up in connection with litigation concerning his will. It does not appear from plaintiff's testimony that she knew of the judgment in the earlier period. The evidence that Parsons knew of it is somewhat indistinct, as the date of his first knowledge does not appear. Under the facts as stated, the plaintiff would be allowed to collect the alimony, with interest, so far as the statute of limitations has not run. But the vital part of the controversy is unsaid. The defendants, among other things, pleaded that on May 24, 1867 (the day after the decree was entered), the husband and wife executed an agreement that discharged the judgment. The defendants relied for its introduction in evidence upon the acknowledgment, while the plaintiff stated: "No, I don't think I ever signed that." Later she said: "It looks something like my writing. * * * The 'Van Ness' looks like my writing. Q. Does the 'Deborah' look like your writing too? A. I wouldn't say that was my writing. Q. On the other hand, you won't swear it is not your handwriting, will you? A. No, I will not." Parsons says that the signature is not the proper handwriting of Mrs. Van Ness, and, continuing, he gives his reasons. But he had seen her write only within a few months of the trial, and was totally unacquainted with her writing in 1867. There was a letter written by her in 1870, and her present signature, which were used for purposes of comparison. But Mrs. Van Ness says that she did not sign any paper the day before she sailed, that she had no business negotiations with anybody relative to compromising the alimony, that no gentle-

man called on her that day and asked her to sign it. Mr. and Mrs. Parsons and Mrs. Van Ness' sister, Mrs. Taylor, gave testimony tending to corroborate the plaintiff's statement that such transaction did not take place at the house on the 24th, and that Mrs. Van Ness did not go out. The question is: Was there sufficient evidence to rebut the force of the certificate of the commissioner of deeds?

[2] As both parties made a motion for judgment, the question of fact was left to the court, and I conclude that in probative weight the evidence sustains the decision.

[3] But, if she signed the agreement, questions remain whether the agreement without performance extinguished the judgment for alimony, and, if it did not, is there a presumption of payment from lapse of time? The plaintiff's argument is that the agreement was executory, and that the former obligation was not extinguished by the promise to pay the $10,000, but was extinguishable only by the actual payment thereof. The question is arguable. It should be considered that the day before the agreement was made the judgment was recovered that committed Van Ness to the payment of alimony; that the judgment was a form of contract higher than the agreement, and that it bound him to omit payment at his peril. It is a fair argument that it is improbable that the plaintiff (if she knew anything about it; she says she did not) intended to release at once what had just been acquired, in sole reliance upon Mr. Van Ness' simple promise to pay. But what would seem improbable in the case of a divorce, where the parties were openly hostile, might with more probability happen where the parties seemed measurably amicable, and united at least in one family circle. The divorce obtained by default usefully supplied a consideration for the agreement. The agreement, after reciting the obligation of the judgment, states that the judgment creditor desires that a certain sum of money be paid her, "to be received by her as a full discharge and acquittance of the party of the first part of and from all claim for alimony and in full and complete discharge thereof, and also to be received by her as payment for and full compensation for her dower interest, * * * and also to be received by her in full and complete discharge of all claims * * * against the property * * * of the said party of the first part which he now owns or may hereafter own." Note that her desire is not to release for an agreement to pay money, but for the actual payment of money. That seems to help the plaintiff.

But now the paper favors more the defendants' construction. It proceeds that in consideration of $10,000, "to be paid as hereinafter mentioned, she will and does hereby release and discharge the said party of the first part of and from all claims for alimony which she might otherwise have or become entitled to, and agrees that the said sum is to be received in full and complete discharge thereof, and also that she will and does receive the same in full compensation for and discharge of her dower interest in any lands, * * * and also in full and complete discharge of all claim of the party of the second part of any nature or description against the property * * * of the first part which he now owns or may hereafter possess; and the said party of the second part hereby authorizes and empowers the party of the first

part to sell and convey any real estate which he may now own or hereafter become possessed of, and agrees that such conveyance shall be unincumbered by any claim for dower or of any nature whatever on her part, and, in consideration of the covenants and agreements on the part of the party of the second part hereinbefore set forth, the said party of the first part agrees to pay to the said party of the second part the sum of $10,000 in the manner following, to wit, the sum of $3,951.95 in cash and the sum of $2,000 yearly to be paid in such amount and at such time as the party of the second part may designate until said principal or the amount remaining due thereon, to wit, the sum of $6,048.-05 shall have been fully paid, together with interest on said balance until paid." The defendants contend that the language shows intent to make present release of the judgment, so far as it awards alimony, and that such purpose is the more manifest, as there is an attempt to release dower and other property rights. The judgment provided for the payment of $150 on May 23, 1867 (the day it was entered), and quarterly thereafter. There was something on which the words "does release" could operate. But, where the agreement says that she "does" release, she says also that she "will" release; but it is in consideration of money "to be paid," while later it is stipulated that "said sum is to be received in full and complete discharge," and "that she will and does receive the same in full compensation for and discharge of her dower," etc. But it must be noticed that she was to receive $3,951.95 in cash, presumptively upon the execution of the instrument, so that such payment was not executory. That was a sum far in excess of anything due on the judgment. It is consistent fairly with the terms of the instrument that she intended to release the whole judgment upon receiving that sum, and that she intended to trust him for the balance. It certainly was her intention to release all claim in her inchoate dower and all claim against his property owned or after acquired. Probably a considerable absence abroad was intended, and it was desirable that meantime he should be able to convey. But what scope did it give him if he must wait until he had paid the entire $10,000 according to the terms? Moreover, the agreement gave him power to sell, and, if the power was valid, it enabled him to convey at once all his land, free of any claim on her part, including her right to pursue his property for the satisfaction of the judgment. So, I incline to the conclusion that the agreement as such was to be accepted as superseding the obligations of the judgment. There was to be a cash payment, and the balance was to be paid yearly, in such amount and at such time as she willed.

[4] Did he pay her the cash? The next day she went abroad and he provided $500, which she put in her belt, and he sent her during five years the sum of $6,500 or $7,500. Parsons says that it was all expended for Mrs. Van Ness and Alice, and, as I understand, in quite a minor degree for Mr. Parsons. Parsons says that Van Ness "sent money for his wife and daughter. * * * He sent money for a common fund, which was to be expended as by agreement with him. Q. That amounted to $6,500 during the five years? A. Yes. Q. For the three parties? A. Yes." He also states what he received for himself. Now why was Van Ness sending his wife money? Was it to apply

on this agreement? I think so, unless the judgment and agreement, one or both, were shams. It is difficult to believe that Van Ness was divorced without collusion, and that he sent her money irrespective of the divorce. And so, if the agreement was genuine, it could hardly be inferred that Van Ness was making payments as if it did not exist. So it is inferable that he paid her by virtue of the agreement during her absence in Europe. Where did she get the money for her support ror the two years after her asserted return? That is a consideration of value. The facts aligned are instructive. Judgment by default, with alimony to a wife living in the same house with her husband; her long ignorance of the alimony and, so far as appears, of the judgment itself; the daughter's unconsciousness of the affair; her husband's lack of knowledge of the provision for her mother's support; the agreement depending for consideration upon the release of the judgment on the day following its recovery; the departure for and long residence in Europe on the money sent to her; the 2 years of life after the return; the 36 years of silence after the plaintiff went to live with her daughter, with no suggestion of support from Van Ness; the gifts to the daughter in the benefits of which her mother would share—all those facts show relation to a plan probably contrived and conducted by Van Ness with the plaintiff complaisant or constrained but uninformed and, as I believe, illy advised or unadvised.

I cannot separate the agreement from the series of events. In the sequence it has its proper place. It shows why there was provision for alimony in the judgment, why payments were made for several years and then stopped, and why more than a generation passed while the plaintiff did not ask for support, and Van Ness indicated no sense of responsibility to contribute to it. But was the $10,000 paid? The $500 and $6,500 or $7,500 are the only moneys shown to have been paid. Taking the larger aggregate, there was $8,000 (some of which Parsons returned to Van Ness) used for the support of three persons for five years, disregarding fares and expenses going and coming. That would be at the rate of $1,600 per year, or $533.33 per person. The evidence showed that Parsons did something for himself. But, even so, the plaintiff's share of the $8,000 would not meet the cash payment of $3,951.95 demanded by the contract. It may be inferable that Van Ness paid her money or supported her for two years after her return. But even so, at the rate of payment observed when abroad, the $10,000 would not be paid. So, whatever the fact may be, full payment of that sum is not shown. So that, if performance of agreement only would release the judgment, it has not been released. But the defendants urge, in effect, that the lapse of time sufficient to bar the agreement raises, for present purposes, a presumption of payment of the money payable by the agreement. That is more than a doubtful proposition. The statute of limitations is one of repose. In the present case, plaintiff says, in effect: "Van Ness owed and now his estate owes me something on the judgment." One answer proffered is that there was an agreement to release, which as such releases; and even if it was executory, it has been paid. How? By the statute of limitations running against it, and thereby raising a presumption of payment. The

defendants assert payment by interposing another agreement, which they claim is itself by legal presumption fulfilled. The plaintiff is not proposing the agreement or asking anything under it. If it is executory, those invoking it to defeat another instrument must prove performance, and that cannot be done by showing that, if plaintiff had sued upon it, she could not recover, because a statute which operates by presuming payment has run against it. The defendants attack the judgment. Their weapon is an agreement requiring the payment of money. The statute of limitations has run against it. From such premise defendants argue payment. The syllogism misuses, as I think, legal rules. But I do not pursue this issue nor seek to justify my views by citation of authorities. The question becomes unimportant if the agreement immediately released the judgment. I have concluded that it did.

The judgment and order should be affirmed, with costs. All concur.